GREGORY, Circuit Judge,
concurring.
I concur in the opinion of the Court. I write separately, however, to make two observations. First, I wish to emphasize that Banks v. Dretke, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004), enhanced the cause inquiry by making the prosecution’s conduct the central focus. Second, in my view, Walker has satisfied the elements of a Brady claim such that we can remand for a new trial without need of an evidentiary hearing.
In remanding this ease for reconsideration, the Supreme Court instructed us to consider this case anew in light of Banks. We last considered the question of whether Walker has shown cause and prejudice sufficient to excuse the procedural default of his Bianca Brady claim in 2003. See Walker v. True, 67 Fed.Appx. 758 (4th Cir.2003). In that now vacated and withdrawn opinion, we considered only whether Walker had knowledge of the facts underlying his Bianca Brady claim. There, we stated that “[i]f Walker ... was aware or should have been aware that documents had been suppressed when he appealed his conviction, suppression of the documents would not constitute cause for failure to bring a Brady claim.” Id. at 767. However, as made clear in Banks, that is not the end of the cause inquiry.
Banks revives Walker’s Bianca Brady claim by clarifying that where the cause inquiry is considered, the chief concern is the prosecution’s — not the defendant’s— conduct. In Banks, the Supreme Court rejected the State of Texas’s view that the question of cause “revolves around” the defendant’s conduct. See Banks, 540 U.S. *178 at 695, 124 S.Ct. 1256. The Court instead stated that “the cause inquiry ... turns on events or circumstances external to the defense.” Id. at 696,124 S.Ct. 1256 (internal quotation marks and citations omitted); see also id. at 675-76, 124 S.Ct. 1256 (“When police or prosecutors conceal significant exculpatory or impeaching material in the State’s possession, it is ordinarily incumbent on the State to set the record straight.”). Specifically, in Banks, the State contended that “the prosecution can lie and conceal and the prisoner still has the burden to ... discover the evidence, so long as the potential existence of a prosecutorial misconduct claim might have been detected.” Id. at 696, 124 S.Ct. 1256 (internal quotation marks and citations omitted). The Court did not agree, stating that “[a] rule thus declaring ‘prosecutor may hide, defendant must seek,’ is not tenable in a system constitutionally bound to accord defendants due process.” Id. The Court’s decisions therefore “lend no support to the notion that defendants must scavenge for hints of undisclosed Brady material when the prosecution represents that all such material has been disclosed .... [DJefense counsel has no ‘procedural obligation to assert constitutional error on the basis of mere suspicion that some prosecutorial misstep may have occurred.’ ” Id. at 695-96, 124 S.Ct. 1256.
Further, in making the prosecution’s conduct the central focus of the cause inquiry, the Court acknowledged the “special role played by the American prosecutor in the search for truth in criminal trials.” Banks, 540 U.S. at 696, 124 S.Ct. 1256 (citation omitted). In light of a prosecutor’s truth-finding obligations, the Court concluded that Banks was entitled to rely on the prosecution’s representations. See id. at 698, 124 S.Ct. 1256 (“Banks’s prosecutors represented at trial and in state postconviction proceedings that the State had held nothing back. Moreover, in state postconviction court, the State’s pleading denied that Farr was an informant. It was not incumbent on Banks to prove these representations false; rather, Banks was entitled to treat the prosecutors’ submissions as truthful.” (internal citations omitted)). Likewise, the Court concluded that “it was ... appropriate for Banks to assume that his prosecutors would not stoop to improper litigation conduct to advance prospects for gaining a conviction” by standing silent as a key prosecution witness repeatedly testified untruthfully. Id. at 694, 124 S.Ct. 1256.
The instant case presents facts akin to those in Banks. As in Banks, the prosecution told the defendant and the court that it had disclosed all Brady material although it had in fact withheld the police reports at issue. At trial, the prosecution allowed Bianca to testify in a seemingly untruthful fashion, all the while emphasizing the importance and credibility of her testimony. Cf. Banks, 540 U.S. at 675, 124 S.Ct. 1256 (“Instead of correcting the informant’s false statements, the prosecutor told the jury that the witness ‘ha[d] been open and honest with you in every way,’ and that his testimony was of the ‘utmost significance’.” (internal citations omitted)). We did not consider these facts the last time we addressed Walker’s Brady claim, however.
In light of Banks, these egregious, affirmative acts of prosecutorial misconduct cannot be ignored simply because Walker overlooked a hint of prosecutorial misconduct. Unlike the police reports themselves, which strongly suggest that Bianca did not see the intruder who shot her father, the PSR only indicates that on one occasion Bianca referred to having recognized Walker’s voice. The PSR does not reveal that on the night of the murder, Bianca never indicated having seen the intruder or that her statement about *179 recognizing the intruder’s voice was corroborated on multiple occasions. Therefore, when placed in the context of the prosecution’s representations that it had satisfied its obligations under Brady, its standing by as Bianca seemingly perjured herself, and its repeated assertions that Bianca was a trustworthy witness, the PSR’s single mention of Bianca’s voice identification of Walker provides no more than an inkling of prosecutorial misconduct. Simply put, the solitary reference to Bianca’s hearing of the intruder’s voice could have been disregarded by a defendant inclined to believe “that his prosecutors would not stoop to improper litigation conduct to advance prospects for gaining a conviction.” Banks, 540 U.S. at 694, 124 S.Ct. 1256. Accordingly, I agree that Walker has shown cause for his procedural default.
Finally, I believe that Walker’s showing of cause and prejudice is not merely sufficient to overcome the procedural default, but also to satisfy the second and third elements of a Brady claim. As observed in Banks, a defendant who shows cause and prejudice to excuse a procedural default simultaneously satisfies the second and third elements of a Brady claim— evidence suppressed by the state and prejudice, respectively. See Banks, 540 U.S. at 691, 124 S.Ct. 1256. Without question, the first Brady element — the suppressed evidence is favorable to the accused — is satisfied here. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (setting forth the elements of a Brady claim). Indeed, the undisclosed reports contain powerful impeachment material, which calls into question the veracity of Bianca’s testimony. Thus, I believe that the conclusion that a Brady violation occurred flows from the finding of cause and prejudice. Accordingly, in lieu of remanding for an evidentiary hearing, I believe we could hold that Walker’s due process rights were violated, grant the writ, and remand for a new trial.