WILLIAMS, Circuit Judge,
dissenting.
With all due respect to the majority, I dissent. I disagree with the majority’s conclusion that Walker has shown cause sufficient to excuse his failure to raise in state[1] court his claim under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In my view, the Presentence Report (PSR) was plainly sufficient to make Walker aware of the factual basis of his Brady claim. I would therefore affirm the district court’s dismissal of Walker’s § 2254 petition without evaluating whether Walker has shown prejudice.
I.
On or around the night of Beale’s murder, officers, including Officer Mullins and Detective Hickman, interviewed Beale’s daughter Bianca. According to the officers’ notes, reports, and affidavits (collectively “reports”), Bianca stated that she recognized her father’s murderer by his voice. (J.A. at 485) (“[Bianca] heard a voice and stated it sounded like [Walker] and she was positive that it was [Walker].” (Mullins’ notes)); 489 (“[Bianca] stated that she recognized the voice of the subject. ...” (Mullins report); 543A (“[Bianca] stated she recognized the voice of the perpetrator.... ” (Hickman Aff.)).) Because eyewitnesses to events generally do not describe the people who undertook those events by the sound of their voice, these reports tend to suggest that Bianca did not actually see Walker break into the apartment and kill her father. The prosecution did not share the officers’ reports with Walker despite its pre-trial represen *180 tation that it had provided Walker all documents it was required to disclose. At Walker’s trial, Bianca testified that: (1) she saw Walker come inside the apartment of her mother and father; (2) she saw that Walker was holding a gun; (3) she yelled at Walker, “my father don’t know you;” (4) she saw Walker shoot her father; and (5) once the shooting started she ran into the bathroom. (J.A. at 25-29.)
Approximately four months before trial, Walker’s counsel was given a copy of Beale’s Autopsy Report, which stated that “[witnesses inside the [Beale apartment] heard the shots but did not witness the shooting.” (Supp. J.A. at 7). Counsel did not cross-examine Bianca with respect to the contents of the Autopsy Report. After his conviction, but before his sentencing, the state prepared a PSR, which it gave to Walker. In relevant part, the PSR states:
Bianca Taylor, the victim’s daughter advised police she was talking on the phone with a neighbor.... She further advised police [that the neighbor] stated [to Bianca,] “[Walker and his girlfriend] are coming to talk to you.” Shortly thereafter, the shots began. Bianca Taylor later advised Detective Hickman that she recognized the voice of the suspect. ...
(Pet’r Supp.App. at 250.) Despite the fact he was in possession of the Autopsy Report and the PSR, Walker did not raise a Brady claim with respect to the officers’ reports on direct appeal. Instead, Walker first raised his Brady claim in his state habeas corpus petition. The state court concluded that Walker’s Brady claim was procedurally defaulted under Slayton v. Parrigan, 215 Va. 27, 205 S.E.2d 680, 682 (1974) (holding that state habeas petitioner waives argument on habeas review that “could have been raised and adjudicated at ... trial and upon ... appeal”).
Walker filed a § 2254 petition in the United States District Court for the Eastern District of Virginia, raising, inter alia, his Brady claim. The district court dismissed Walker’s petition, concluding, in relevant part, that the Brady claim was procedurally defaulted and that Walker had not shown cause and prejudice to excuse his default. Judge Gregory granted Walker a Certificate of Appealability on his Brady claim. On the merits, however, the panel unanimously affirmed, concluding that Walker could not show cause for his procedural default because the PSR made Walker aware of “the factual basis [of his] Brady claim.” See Walker v. True, 67 Fed.Appx. 758, 767-68 (4th Cir.2003). The Supreme Court vacated and remanded for further consideration in light of Banks v. Dretke, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). See Walker v. True, — U.S. —, 126 S.Ct. 1028, 163 L.Ed.2d 849 (2006).
II.
As he did in his original appeal to this Court, Walker argues that he has shown “cause and prejudice” to overcome the procedural default of his Brady claim. As to cause, he contends that the PSR and Autopsy Report were insufficient to make him aware of the factual basis of his claim because those reports suggested only that Bianca did not see the shooting, not that she did not see the shooter. Virginia argues — as we held in our original opinion— that the PSR was sufficient to make Walker aware of the factual basis of his Brady claim. I continue to agree with Virginia.
A federal court conducting habeas review is “precluded from reviewing the merits of a claim that was procedurally defaulted under an ‘independent and adequate’ state procedural rule, ‘unless the [applicant] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the *181 claims will result in a fundamental miscarriage of justice.’ ” Fisher v. Lee, 215 F.3d 438, 455 (4th Cir.2000) (alteration in original) (quoting Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Walker does not dispute that the state court applied an adequate and independent procedural rule in finding that his Brady claim was procedurally defaulted. Moreover, he does not argue that failure to consider his Brady claim will result in a fundamental miscarriage of justice. Instead, he asserts only that “cause and prejudice” exist to excuse the default. We review de novo the district court’s legal conclusions respecting cause and prejudice. See Burroughs v. Makowski, 411 F.3d 665, 667 (6th Cir.2005).
In Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the Supreme Court set forth the three requirements for a successful Brady claim: “[1] the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] the evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.” Id. at 281-82, 119 S.Ct. 1936. As the Supreme Court noted in Strickler, the second and third elements of a successful Brady claim overlap with the “cause and prejudice” showing that will excuse a petitioner from a procedural default. Id. at 282, 119 S.Ct. 1936; see also Banks, 124 S.Ct. at 1274 (“Corresponding to the second Brady component (evidence suppressed by the State), a petitioner shows ‘cause’ when the reason for his failure to develop facts in state-court proceedings was the State’s suppression of the relevant evidence; coincident with the third Brady component (prejudice), prejudice within the compass of the ‘cause and prejudice’ requirement exists when the suppressed evidence is ‘material’ for Brady purposes.”).
In Strickler, the defendant had been convicted of capital murder, based, in part, on a witness’s testimony that she had seen the defendant violently abduct the victim. 527 U.S. at 270-73, 119 S.Ct. 1936. Despite the prosecution’s open file policy, notes of the investigating officer and witness — which revealed that the witness’s memory of the abduction was hazy and that, from what she could remember, she had “totally [written the abduction] off as a trivial episode of college kids carrying on,” id. at 273-75, 119 S.Ct. 1936 — were not given to the defendant until after he had filed an unsuccessful direct appeal and state habeas petition. On appeal from the district court’s grant of the defendant’s § 2254 petition, which raised a Brady claim relating to the witness’s testimony, the Fourth Circuit held that the defendant’s Brady claim was procedurally defaulted and that the defendant could not show cause because “he should have known [about the police reports] through the exercise of reasonable diligence.” Id. at 279, 119 S.Ct. 1936.
The Supreme Court disagreed, holding instead that the defendant had shown cause because: “(a) the prosecution withheld exculpatory evidence; (b) petitioner reasonably relied on the prosecution’s open file policy as fulfilling the prosecution’s duty to disclose such evidence; and (c) the state confirmed petitioner’s reliance on the open file policy by asserting during state habeas proceedings that petitioner had already received everything known to [it].” Id. at 289, 119 S.Ct. 1936 (internal quotation marks and footnote omitted).[2] The state argued that the defendant’s reliance on its open file policy was not reasonable because (1) counsel was aware that the witness had been interviewed by the police *182 and (2) counsel could have made a motion for discovery of the files in the state courts, id. at 284-85, 119 S.Ct. 1936 but the Supreme Court disagreed, stating that although the defendant was aware of the witness’s interviews, “it by no means follows that [counsel] would have known that the records pertaining to those interviews ... existed and had been suppressed.... [D]efense counsel [has no] procedural obligation to assert constitutional error on the basis of mere suspicion that prosecutorial misstep may have occurred,” id. at 285-87, 119 S.Ct. 1936 (emphasis added). The Court distinguished those cases in which cause was not found for the failure timely to raise a Brady claim by stating that, in those cases, the petitioner “was previously aware of the factual basis for his claim.” Id. at 287, 119 S.Ct. 1936. See also McCleskey v. Zant, 499 U.S. 467, 502, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (“[E]ven if the State intentionally concealed the 21-page document, the concealment would not establish cause here because, in light of McCleskey’s knowledge of the information in the document, any initial concealment would not have prevented him from raising the claim in the first federal petition.”); Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir.1996) (“Because it appears that the information, the withholding of which Hoke contends entitles him to relief, was available to Hoke, it is quite likely that he in fact did default his Brady claim by not presenting that claim in his initial state habeas proceeding.”).
In Banks, the defendant had been convicted of capital murder based, in part, on the testimony of a paid police informant. 124 S.Ct. at 1264-65. The prosecutor asked the witness at trial whether he had been promised anything in exchange for his testimony and, despite knowing the truth about the witness’ status, the prosecutor did not correct the record when the witness testified in the negative. Id. In fact, although the prosecutor had an open file policy, he did not disclose this information until after the petitioner had filed an unsuccessful appeal and two state habeas petitions. Id. at 1269. On appeal from the district court’s grant of the defendant’s § 2254 petition, which raised a Brady claim relating to the witnesses’ testimony, the Fifth Circuit held that Banks’s Brady claim was procedurally defaulted because he had failed to develop that claim in his state proceedings. Id. at 1270.
Noting that, as to cause, Banks’s “case is congruent with Strickler in all ... respects,” id. at 1273, the Supreme Court applied Strickler’s three-part cause test, id. (examining whether prosecution withheld exculpatory evidence, whether petitioner reasonably relied on the prosecution’s open file policy, and whether the state confirmed petitioner’s reliance), reiterating Strickler’s admonition that the petitioner’s reliance on the Government’s open file policy is reasonable if he has nothing more than “mere suspicion” of a Brady violation, id. at 1275 (quoting Strickler, 527 U.S. at 287, 119 S.Ct. 1936). Accordingly, although Banks had suspicions that the witness was well-connected with law enforcement and could have discovered the truth by deposing the witness or the police officer who paid him, Banks’s failure to act on those nascent suspicions did not prevent the Court from finding cause for his failure timely to raise his Brady claim. Id. at 1275-76. Moreover, the Court concluded that the reasonableness of Banks’s reliance on the prosecution’s open file policy was even greater than in Strickler because the Brady mate *183 rial went directly to the prosecutions’s dealings with the witnesses- — -in fact, it was the prosecution who coached them- — -and “it was appropriate for Banks to assume that his prosecutors would not stoop to improper litigation conduct to advance prospects for gaining a conviction.” Id. at 1273-74.
In my view, even assuming the Autopsy Report implied only that Bianca did not witness the actual shooting — and not that she did not witness the shooter — the PSR plainly gave Walker more than a “mere suspicion” that police reports existed suggesting Bianca did not witness the shooter. Accordingly, Walker’s reliance on the prosecutor’s representation that he had disclosed all material he was required to disclose was unreasonable under Strickler and Banks. First, the PSR specifically states that the information contained therein came from officers’ investigation of the Beale murder, a statement that, unlike the facts in Strickler and Banks, indicated to Walker that there were extant documentation of the investigation. Second, and also unlike the facts involved in Strickler and Banks, the PSR detailed the contents of those reports, and actually went so far as to state that “Bianca ... advised Detective Hickman that she recognized the voice of the suspect____” (J.A. at 250.) Because, as already explained, eyewitnesses to events generally do not describe the people who undertook those events by deseribing the sound of their voice, the PSR was sufficient to put Walker on notice that there were police reports supporting an inference that Bianca did not see him the night of her father’s murder. Indeed, I find it baffling that the majority can conclude both that “the withheld reports provide persuasive evidence that Bianca did not see the shooter the night of the murder” because they state that Bianca only recognized the shooter by his voice, ante at 12 (emphasis added), and at the same time that the PSR, which noted the existence of those reports and parroted their relevant substance, somehow failed to give Walker anything more than a mere suspicion of the factual basis of his Brady claim.
Accordingly, Walker’s awareness of the existence of the alleged Brady material prior to his sentencing removes this ease from the Strickler /Banks framework. Because Walker knew of the existence of the alleged Brady material in time to pursue his Brady claim on direct appeal, there is no reason to relieve him of the consequences of his failure to have done so.[3]
As we concluded in our earlier opinion in this case, “[the PSR], by referencing these undisclosed documents, evidenced the Commonwealth’s suppression of the alleged Brady material. The factual basis for the assertion of Walker’s Brady claim, therefore, was available ... before [his] direct appeal.... ” Walker, 67 Fed.Appx. *184 at 767-68. “Because the [PSR] provided direct evidence that the Commonwealth had failed to disclose the alleged Brady-material, Walker’s reliance on Strickler for the premise that his appellate counsel had no basis to raise a Brady claim is therefore misplaced.” Id. at 767 n. 6. Because nothing in Banks even arguably undermines this conclusion, I respectfully dissent.[4]

. I use the familiar term "state” in lieu of "Commonwealth of Virginia.”

. The Supreme Court left open the question “whether any one or two of these factors *182 would be sufficient to constitute cause.” Strickler v. Greene, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

. My good colleague Judge Gregory confuses this point. He notes that in Banks v. Dretke, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004), the Supreme Court reaffirmed that defendants need not "scavenge for hints of undisclosed Brady material when the prosecution represents that all such material has been disclosed.” Id. at 1275. This statement, however, hardly was a new statement of law considering that the Supreme Court in Strickler rejected "the novel suggestion that conscientious defense counsel have a procedural obligation to assert constitutional error on the basis of mere suspicion that some prosecutorial misstep may have occurred.” Strickler, 527 U.S. at 286-87, 119 S.Ct. 1936. Banks, in fact, did nothing to alter Strickler’s cause inquiry. See Banks, 124 S.Ct. at 1272 ("Our determination as to 'cause’ for Banks’s failure to develop the facts in state-court proceedings is informed by Strickler.")', id. at 1272 n. 12 (expressing surprise at the Fifth Circuit’s failure below to refer to Strickler, "the controlling precedent on the issue of 'cause’ ”); id. at 1273 ("This case is congruent with Strickler in all three [cause factor] respects.”). The only difference with respect to the cause showing *184 between Banks and Strickler was that "Banks’s case [was] stronger than was the petitioner’s in Strickler." Id. Thus, the Supreme Court in Banks did not alter the cause inquiiy, but instead merely found cause in a case where the facts were slightly more egregious than those in Strickler. It is difficult, then, to comprehend Judge Gregory’s contention that Walker can now show cause "[i]n light of Banks," ante at 24, when he was unable to do so in light of Strickler. Walker v. True, 67 Fed.Appx. 758 (4th Cir.2003).

. The majority concludes that Walker has shown both cause and prejudice to excuse his procedural default. As discussed, this conclusion means that Walker has satisfied two of the three elements of a successful Brady claim. See Strickler, 527 U.S. at 282, 119 S.Ct. 1936 (equating the "cause and prejudice" showing with the second and third elements of a Brady claim). The majority therefore remands for the district court to determine only whether Walker has shown the third element of a Brady claim; that is, that “the evidence at issue is favorable to [Walker], either because it is exculpatory or because it is impeaching." Id. at 281-82, 119 S.Ct. 1936. Although the majority strangely refrains from addressing this legal question, its statement that ”[t]he withheld reports provide persuasive evidence that Bianca did not see the shooter the night of [her father’s] murder," ante at 12, answers this question in the affirmative. In essence, then, as suggested by Judge Gregory's concurrence, the majority opinion results in an inevitable grant of Walker’s § 2254 petition.