**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 04-22**

DARICK DEMORRIS WALKER,

Petitioner - Appellant,

versus

LORETTA  K.  KELLY,  Warden,  Sussex  I  State
Prison,

Respondent - Appellee.

On Remand from the Supreme Court of the United States.
(S. Ct. No. 05-6942)

Argued:  May 22, 2006              Decided:  August 24, 2006

Before WILLIAMS and GREGORY, Circuit Judges, and Henry F. FLOYD,
United States District Judge for the District of South Carolina,
sitting by designation.

Vacated and remanded by unpublished opinion.  Judge Floyd wrote the
majority opinion, in which Judge Gregory concurred.  Judge Gregory
wrote  a  separate  concurring  opinion.  Judge  Williams  wrote  a
dissenting opinion.

**ARGUED**: Danielle Spinelli, WILMER, CUTLER, PICKERING, HALE & DORR,
L.L.P., Washington, D.C., for Appellant.  Katherine P. Baldwin,
Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL,
Richmond, Virginia, for Appellee.  **ON BRIEF**: David W. Ogden, Alison
J. Nathan, D. Hien Tran, WILMER, CUTLER, PICKERING, HALE & DORR,
L.L.P., Washington, D.C., for Appellant.  Robert F. McDonnell,
Attorney General of Virginia, Jerry P. Slonaker, Senior Assistant

Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

―――――――――

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

FLOYD, District Judge:

Darick D. Walker brings this appeal asserting that the district court erred by failing to find cause and prejudice sufficient to overcome the procedural default of his claim under Brady v. Maryland, 373 U.S. 83 (1963), as it relates to the evidence withheld by the Commonwealth regarding prosecution witness Bianca Taylor (Bianca Brady claim).

We agree with Walker and, for the reasons set forth below, hold that Walker has established the cause and prejudice necessary to overcome the procedural default of his Brady claim. Accordingly, we vacate the judgment of the district court and remand for an evidentiary hearing on the merits of his Bianca Brady claim.

I.

Catherine Taylor and her children, Bianca, Monique, and Sidney, lived in University Terrace Apartments with Stanley Beale, the children's father. (J.A. at 35.) On the evening of November 22, 1996, Stanley Beale was in the kitchen of the Beale apartment when Catherine Taylor, who was in the bedroom with the three children, heard a "boom like noise" in the living room. (J.A. at 36.) According to the testimony at trial, Catherine, Bianca, and Monique left the bedroom and entered the living room. (J.A. at 37.) Catherine and Bianca testified at trial that they saw a man

3

kick in the front door and enter the apartment with a gun, (J.A. at 26, 37.), and that Beale, who was standing in the doorway of the kitchen, answered the intruder by stating, "I don't know you." (J.A. at 25, 37.)

On the night of the incident, Catherine provided police with a detailed description of the height, build, and clothing of the intruder. (J.A. at 489, 844.) Nevertheless, she was unable to identify Walker as the intruder in a photo lineup. (J.A. at 40.) Bianca, on the other hand, attested at trial that she saw Walker shoot her father and recognized him as someone she knew named "Todd." (J.A. at 27-29.) Bianca identified Walker during a photo lineup and again at trial as "Todd." (J.A. at 29-30.)

Tameria Patterson, a fourteen-year-old girl at the time of the trial, was visiting the home of Karen Randolph in University Terrace Apartments (Randolph apartment) on the night of the murder. (J.A. at 50-51.) At trial, Tameria stated that she saw a man she knew as "Todd" enter the Randolph apartment and say "I shot him." (J.A. at 52.) During a photo lineup and later at trial, Tameria identified Walker as the person who entered the Randolph apartment. Id.

On August 31, 1998, through September 1, 1998, Walker was tried and convicted by a jury in the Circuit Court for the City of Richmond on charges of capital murder for the deaths of Stanley Beale and Clarence Threat, on two counts of burglary, and on four

4

counts of using a firearm in the commission of a murder and burglary. (J.A. at 182-84.) Walker received a sentence of life imprisonment for each of the two burglary convictions and a total of eighteen years imprisonment for the firearm convictions. (J.A. at 333C.) In a separate sentencing proceeding, the jury sentenced Walker to death for his capital murder convictions. (J.A. at 333C.)

On June 11, 1999, the Virginia Supreme Court affirmed Walker's conviction and death sentence. Walker v. Commonwealth, 515 S.E.2d 565, 577 (Va. 1999). The United States Supreme Court subsequently denied Walker's petition for writ of certiorari. Walker v. Virginia, 528 U.S. 1125 (2000).

The Supreme Court of Virginia dismissed Walker's habeas corpus petition on March 23, 2001. Walker v. True, No. 615, slip op. at 12 (Va. Mar. 23, 2001); (J.A. at 359.) The state trial court then set Walker's execution date for August 7, 2001. The federal district court stayed Walker's execution on July 31, 2001, and granted his motion for appointment of counsel.

On February 1, 2002, Walker filed his federal petition for a writ of habeas corpus in accordance with 28 U.S.C. § 2254, along with a discovery motion seeking the police records related to the Beale murder. (J.A. at 388.) On July 26, 2002, the district court dismissed Walker's petition and denied all outstanding motions. Walker v. True, No. 01-1196-A, slip op. at 55 (E.D. Va. July 26,

5

2002); (J.A. at 942.) The district court denied Walker's motion for reconsideration on September 4, 2002, Walker v. True, No. 01-1196-A, slip op. at 1 (E.D. Va. Sept. 4, 2002), and Walker noted his appeal on October 4, 2002. (J.A. at 1001.)

In an unpublished opinion dated May 6, 2003, this court granted Walker's Certificate of Appealability on, inter alia, his claim that the Commonwealth failed to disclose certain evidence in violation of Brady, 373 U.S. 83. Walker v. True, 67 Fed. App'x. 758, 762 (4th Cir. 2003). The panel then held that Walker failed to establish sufficient cause to undermine the state court's finding that he knew of the factual basis underlying his Bianca Brady claim at the time of trial and on direct appeal. Id. at 767.

Walker subsequently petitioned the United States Supreme Court for a writ of certiorari on several bases, including an argument that this court erroneously decided his Brady claim. The Supreme Court granted certiorari, vacated, and remanded for reconsideration of his ineffective assistance of counsel claim, but not for reconsideration of the Brady claim. Walker v. True, 540 U.S. 1013 (2003). The district court and this court reconsidered the ineffective assistance claim and again dismissed it. Walker v. True, 401 F.3d 574 (4th Cir. 2005).

Walker once more petitioned the United States Supreme Court for certiorari, rearguing, inter alia, that this court erred in deciding his Brady claim in 2003. The Supreme Court granted

6

certiorari and remanded the case to this court for reconsideration of the Brady claim in light of the Court's intervening decision in Banks v. Dretke, 540 U.S. 668 (2004).

## II.

As a general rule, we are

precluded from reviewing the merits of a claim that was procedurally defaulted under an "independent and adequate" state procedural rule, "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (citation omitted). Viewing the facts of the case at bar through the lens of Banks, we will now consider whether Walker has shown the requisite cause and prejudice to overcome the procedural default of his Brady claim.

## III.

### A.

We first consider the cause factor as illustrated by the facts in Banks. In Banks, the petitioner was convicted of capital murder and sentenced to death. 540 U.S. at 674. Prior to trial, the State advised Banks' attorney that it would provide all discovery to which Banks was entitled. Id. Despite this assertion, however,

7

the State withheld evidence that would have allowed Banks to discredit two essential prosecution witnesses. Id. at 675.

Through the course of discovery and an evidentiary hearing authorized by the district court in Banks' federal habeas proceeding, the evidence revealed that one of the State's key witnesses was a paid police informant. Id. Furthermore, a pretrial transcript revealed that the "other witness' trial testimony had been intensively coached by prosecutors and law enforcement officers." Id.

The district court granted Banks' petition with respect to his death sentence, but the court of appeals reversed, finding that Banks had documented his claims of prosecutorial misconduct too late and in the wrong forum. Id. The Supreme Court reversed the lower court's decision and held that Banks had demonstrated the requisite cause for his failure to raise a Brady claim in state proceedings. Id. The court reached its conclusion by applying the tripartite test announced in Strickler v. Greene, 527 U.S. 263, 289 (1999):

> (a) prosecution withheld exculpatory evidence; (b) petitioner reasonably relied on the prosecution's open file policy as fulfilling the prosecution's duty to disclose such evidence; and (c) the [State] confirmed petitioner's reliance on the open file policy during state habeas proceedings that petitioner had already received everything known to the government.

Banks, 540 U.S. at 692-93. We now apply the Strickler factors to the facts of the instant case.

8

Walker argues that the first Strickler factor, that the prosecution failed to disclose Brady material, is met in the instant case. We agree. As detailed below, the Commonwealth knew of, but failed to disclose, police reports that contain evidence which challenges the credibility of Bianca Taylor's alleged eyewitness testimony.

Specifically, in a signed affidavit, Walker's habeas counsel attested that several Freedom of Information Act (FOIA) requests were sent to the Richmond Police Department, the Office of the Attorney General, the Office of the Commonwealth Attorney, and the Virginia Department of Corrections seeking to obtain any Brady material in the Stanley Beale and Clarence Threat files. (J.A. at 491.) Two days before Walker's state habeas petition was due, Walker's counsel received the Beale police reports in response to his requests. (J.A. at 494.) Walker relies on the following of those reports in support of his Bianca Brady claim:

1.  In a Supplementary Offense Report dated November 22, 1996, Officer David Ernst summarized his initial investigation of the murder of Stanley Beale and stated that Bianca Taylor "could provide no further information" other than describing shots being fired. (J.A. at 537.)

2.  In the handwritten notes of Detective Curtis Mullins, dated November 22, 1996, Mullins states that "13 yr. old heard voice and stated that it sounded like Todd and she

9

was positive that it was Todd[ ]." (J.A. at 485, 859.) This note was based on a brief summary of information verbally provided to Mullins by Hickman and Ernst from the night of the murder. (J.A. at 856-57.) Mullins did not personally talk to Bianca until February 1, 1997. (J.A. at 857.)

3. On December 16, 1996, Detective Mullins prepared another Supplementary Offense Report. According to the report, "[Bianca] stated that she recognized the voice of the subject as a BM by the name of Todd or Ty." (J.A. at 489, 866.) This report was based on other officers' reports. (J.A. at 857.)

4. In Detective James Hickman Sr.'s affidavit, he states that "Bianca did not report witnessing the actual shooting of Stanley Beale." (J.A. at 543A.) Hickman subsequently retracted this affidavit and submitted a second affidavit stating that Bianca "describe[d] her father's murderer to me." (J.A. at 841.)

On June 15, 2000, Ernst signed an affidavit stating that Bianca "'could provide no other information' . . . because of her emotional state." (J.A. 835.) We therefore will not consider Officer Ernst's supplemental offense report in making our decision today. The other documents listed above, however, provide compelling evidence suggesting that Bianca never saw the intruder

10

the night of the murder and that she based her identification of Walker solely on the intruder's voice.

We now turn to consideration of the above-referenced police reports. As noted above, Detective Mullins wrote two reports based on summaries provided by officers who interviewed Bianca the night of the murder. In the first report written on November 22, 1996, he states that a "13 yr. old heard voice and stated that it sounded like Todd and she was positive that it was Todd[ ]." (J.A. at 485, 859.) In December of 1996, Detective Mullins wrote in a supplemental police report, "[Bianca] stated that she recognized the voice of the subject as a BM by the name of Todd or Ty." (J.A. at 489, 866.)

Next, an affidavit submitted by Detective Hickman stated that Bianca recognized the murderer's voice but was unable visually to identify him. (J.A. at 543A.) Hickman subsequently retracted this affidavit and submitted a second affidavit stating that Bianca "describe[d] her father's murderer to me," (J.A. at 841.) The handwritten notes accompanying his affidavit contain a physical description of the person Bianca knew as "Todd." (J.A. at 847.) Detective Hickman's handwritten notes detailing Bianca's description, however, fail to indicate that she saw "Todd" on the night of the murder. Furthermore, Bianca's description, unlike Catherine Taylor's portrayal of the intruder, fails to mention what the intruder was wearing. (J.A. at 844.)

11

The Commonwealth argues that the autopsy and pre-sentence reports, both of which were provided to Walker, contain the same information found in the withheld police reports. We disagree.

The autopsy report, which was received by Walker prior to trial, stated that unnamed "witnesses inside the home heard the shots but did not witness the shooting." (Supp. J.A. at 7.) (emphasis added). Moreover, the pre-sentence report stated that "[Catherine Taylor] . . . and the daughter, Bianca fled into the bathroom. . . . It was at that time, she heard three shots fired." (Pet'r Supp. App. 249-50.) (emphasis added). The pre-sentence report also states that Bianca advised Detective Hickman that "she recognized the voice of the suspect as a black male by the name of 'Todd or Ty.'" (Pet'r Supp. App. 250.)

Simply put, the availability of the autopsy and pre-sentence reports does not satisfy the prosecutor's duty to disclose the other Brady material to Walker. The withheld reports provide persuasive evidence that Bianca did not see the shooter the night of the murder, whereas the files that were available earlier suggest only that Bianca did not witness the shooting. As such, the withheld documents would have provided substantial evidence impeaching Bianca's trial testimony that she saw the person who shot her father. (J.A. at 27.) Thus, we find the first Strickler factor met here.

The second <u>Strickler</u> factor sets forth a requirement that it was reasonable for the petitioner to rely on the government's assertion that it fulfilled its duty to disclose all <u>Brady</u> material. <u>Strickler</u>, 527 U.S. at 289. We find that Walker has met this requirement.

We begin our discussion of this factor by noting that Walker's reliance argument is much stronger than that found in both <u>Strickler</u> and <u>Banks</u> in a notable respect: Walker filed a formal, explicit request for the disclosure of all <u>Brady</u> material. (Supp. J.A. at 32.) In contrast, Banks relied on the prosecutor's assurances that the prosecutor would, "without necessity of motions provide you with all discovery to which you are entitled." <u>Banks</u>, 540 U.S. at 677 (internal quotation marks and citations omitted). Likewise, Strickler relied on the prosecution's "open file policy" and the State assured him that a formal <u>Brady</u> motion was unnecessary. <u>Strickler</u>, 527 U.S. at 287.

Although the prosecutor did not respond in writing to Walker's Motion for Discovery and Inspection, she confirmed in open court that the Commonwealth had "provided the discovery that we are required to disclose, pursuant to the Rules of the Supreme Court and the statutory provisions that may be provided in the Virginia Code." (J.A. at 10.) Subsequently, when Walker's counsel continued to press the issue of disclosure during the motions hearing, the judge reassured him that the Commonwealth is constitutionally

13

required to disclose any Brady material. (J.A. at 11.) Therefore, we find that Walker was reasonable not only in relying on the presumption that the Commonwealth would faithfully perform its duty to disclose, but also in relying on the explicit representation that the prosecution had disclosed all Brady material. Banks, 540 U.S. at 698 ("It was not incumbent on Banks to prove these representations false[.]").

The contention that documents in Walker's possession might suggest that Bianca provided contradicting statements at trial does not diminish the reasonableness of Walker's reliance on the Commonwealth's representation that it had complied fully with Brady. In Strickler, the Supreme Court held that, even assuming the petitioner knew of the impeaching documents available in the prosecutor's file, it was reasonable for the petitioner to accept the State's "open file policy" and believe no additional impeaching evidence existed. 527 U.S. at 285. We, too, find it was not unreasonable for Walker to assume no additional Brady material existed after the prosecutor told him that the only such evidence related to the Beale murder was the presence of drugs in the victim's system. (J.A. at 481.)

The Commonwealth also argues that it was unreasonable for Walker to rely on the prosecution's affirmative response since Walker could have reasonably discovered all the information later

14

obtained by his habeas counsel's FOIA requests. We are unpersuaded.

The actual response to Walker's habeas counsel's requests is indicative of the "hunt" Walker embarked upon to obtain Brady material. The Attorney General denied outright Walker's request for the Beale and Threat files. (J.A. at 492.) The police, however, turned over the Beale file. (J.A. at 491.) Nevertheless, when Walker's habeas counsel followed up on the Threat file, he was informed that releasing the Beale file had been an error and the Attorney General advised the police not to disclose the Threat file. (J.A. at 493.)

The Commonwealth's argument ignores the well-settled law that the prosecutor had a duty to disclose Brady material to Walker. Strickler, 527 U.S. at 280. It is also violative of due process, as it condones the prosecutor's ability to conceal documents and requires a defendant to search for Brady material. Banks, 540 U.S. at 696 ("A rule thus declaring prosecutor may hide, defendant must seek, is not tenable in a system constitutionally bound to accord defendants due process.") (internal quotation marks and citations omitted).

In short, the cause analysis focuses on prosecutorial misconduct, not on the defendant's diligence. Furthermore, Strickler instructs us that the existence of cause ordinarily turns on factors external to the defense which, as in the instant case,

15

impeded defense counsel's efforts to comply with the State's procedural rule. Strickler, 527 U.S. at 283 n.24.

The third and final Strickler factor requires that the prosecution confirm the petitioner's reliance on the State's disclosure. Strickler, 527 U.S. at 289. We find that Walker has satisfied this requirement.

As a preliminary matter, it bears noting that in Strickler and Banks, the State confirmed the defendant's reliance during state habeas proceedings. Strickler, 527 U.S. 278; Banks, 540 U.S. 692-93. Walker, however, received the Brady material before his state habeas proceeding. Nevertheless, "[t]he standard for cause should not vary depending on the timing of a procedural default." Strickler, 527 U.S. at 284 (internal quotation marks and citation omitted).

As already observed, prior to trial, the Commonwealth conveyed to Walker's counsel that the only Brady material related to the Beale murder was the fact that the victim had drugs in his system. (J.A. at 481.) The Commonwealth later confirmed at a pretrial motions hearing that it had disclosed all Brady materials. (J.A. at 10.) This being the case, it is unnecessary for Walker to establish that the Commonwealth confirmed his reliance again during trial or on appeal. Stated differently, it was reasonable for Walker to assume that the prosecution would comply with a formal Brady motion without the need of constant confirmation. Therefore,

16

we find that Walker has established cause such that he may be entitled to an evidentiary hearing on his Bianca <u>Brady</u> claim.

B.

Although we have found that Walker has established cause, to receive relief in federal court, he must also demonstrate that actual prejudice resulted from his failure to develop facts in state court proceedings. <u>Banks</u>, 540 U.S. at 690-91 ("Banks would be entitled to an evidentiary hearing in federal court if he could show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure.") (internal quotation marks, alterations and citation omitted). To establish prejudice sufficient to overcome procedural default, the withheld evidence must be material. <u>Id.</u> at 698; <u>Strickler</u>, 527 U.S. at 282. Materiality is satisfied when "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." <u>Banks</u>, 540 U.S. at 698 (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 435 (1995)). Under this standard, Walker must demonstrate that there is a "reasonable probability of a different result." <u>Kyles</u>, 514 U.S. at 434.

In <u>Banks</u>, the Supreme Court found prejudice because the lack of physical or forensic evidence made the witness' testimony crucial to the prosecution. <u>Banks</u>, 540 U.S. at 701. According to the Court, this was evident by the prosecution's repeated

17

references to the withheld evidence during the penalty phase to underscore Banks' propensity to commit violent crimes. Id. at 700. Although Banks' trial counsel provided two witnesses to impeach the police informant, the defense witnesses were themselves impeached, a fact the prosecution stressed during its summation. Id. at 702.

In Strickler, however, the Court did not find the requisite prejudice to overcome default. 527 U.S. at 296. The testimony of the witness whose impeachment was at issue, "did not relate to [the petitioner's] eligibility for the death sentence and was not relied upon by the prosecution at all during its closing argument at the penalty phase." 527 U.S. at 295. Furthermore, the Court noted indications that Strickler would have been sentenced to death even if the witness' testimony had been completely excluded. Id. at 296. For example, two other eyewitnesses placed petitioner at the mall where the victim was abducted and "considerable forensic and other physical evidence link[ed] petitioner to the crime." Id. at 293-94 (footnote omitted).

Here, similar to Banks, and unlike Strickler, the lack of forensic or other eyewitness evidence made Bianca's testimony crucial to the prosecution and, thus, not cumulative. Banks, 540 U.S. at 701 (stating that the testimony of the police informant, whose informant status was withheld, was "critical"); Strickler, 527 U.S. at 292 (finding that the evidence provided compelling support for the conclusion that the petitioner would have been

18

convicted of capital murder notwithstanding the testimony of witness whose impeachment was in question.) The prosecutor relied heavily on Bianca's testimony as she made repeated references to Bianca's identification of Walker as the shooter. Further, the prosecution emphasized to the jury that the case "comes down to identification and credibility." (J.A. at 164-65.) The withheld documents could have been used by Walker, therefore, to undermine both Bianca's ability to properly identify Walker as the shooter and her overall credibility.

Bianca's testimony was the "centerpiece" of the case against Walker on the Beale murder because she was the sole "eyewitness." Banks, 540 U.S. at 701 (stating that the police informant's testimony was the "centerpiece" of the prosecution's penalty-phase case). No one else in the apartment with Bianca was able to identify Walker. Moreover, unlike Strickler, the only physical evidence here that linked Walker to the crime was an unfired bullet. (J.A. at 86-92, 106-08, 149-50.)

Given the dearth of physical evidence and the centrality of Bianca's testimony, the withheld evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles, 514 U.S. at 435 (footnote omitted). Furthermore, had Walker not been convicted of the murder of Beale, the Threat murder alone would not have been a sufficient basis for a capital murder conviction. Va. Code Ann. §

19

18.2-31(8) ("The following offenses shall constitute capital murder . . . The willful, deliberate, and premeditated killing of more that one person within a three-year period."); see also Strickler, 527 U.S. at 295 (finding that the witness at issue "did not relate to the [the petitioner's] eligibility for the death sentence.")

Without Bianca's testimony, the only evidence linking Walker to the Beale murder is the uncorroborated testimony of Tameria Patterson that she saw Walker enter the Randolph apartment and say "I shot him." (J.A. at 52.) This lack of evidence underscores the centrality of Bianca's testimony. Consequently, we find that Walker has established that actual, significant prejudice resulted from his inability to develop the factual basis of his Bianca Brady claim at trial.

IV.

For the foregoing reasons, we hold that Walker has established sufficient cause and prejudice to overcome the procedural default of his Bianca Brady claim and that an evidentiary hearing on the merits of his Bianca Brady claim is appropriate. Accordingly, the judgment of the district court is vacated and this case is remanded for an evidentiary hearing on Walker's Bianca Brady claim.

VACATED AND REMANDED

GREGORY, Circuit Judge, concurring:

I concur in the opinion of the Court. I write separately, however, to make two observations. First, I wish to emphasize that Banks v. Dretke, 540 U.S. 668 (2004), enhanced the cause inquiry by making the prosecution's conduct the central focus. Second, in my view, Walker has satisfied the elements of a Brady claim such that we can remand for a new trial without need of an evidentiary hearing.

In remanding this case for reconsideration, the Supreme Court instructed us to consider this case anew in light of Banks. We last considered the question of whether Walker has shown cause and prejudice sufficient to excuse the procedural default of his Bianca Brady claim in 2003. See Walker v. True, 67 Fed. Appx. 758 (4th Cir. 2003). In that now vacated and withdrawn opinion, we considered only whether Walker had knowledge of the facts underlying his Bianca Brady claim. There, we stated that "[i]f Walker . . . was aware or should have been aware that documents had been suppressed when he appealed his conviction, suppression of the documents would not constitute cause for failure to bring a Brady claim." Id. at 767. However, as made clear in Banks, that is not the end of the cause inquiry.

Banks revives Walker's Bianca Brady claim by clarifying that where the cause inquiry is considered, the chief concern is the prosecution's--not the defendant's--conduct. In Banks, the Supreme

21

Court rejected the State of Texas's view that the question of cause "revolves around" the defendant's conduct. See Banks, 540 U.S. at 695. The Court instead stated that "the cause inquiry . . . turns on events or circumstances external to the defense." Id. at 696 (internal quotation marks and citations omitted); see also id. at 675-76 ("When police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight."). Specifically, in Banks, the State contended that "the prosecution can lie and conceal and the prisoner still has the burden to . . . discover the evidence, so long as the potential existence of a prosecutorial misconduct claim might have been detected." Id. at 696 (internal quotation marks and citations omitted). The Court did not agree, stating that "[a] rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." Id. The Court's decisions therefore "lend no support to the notion that defendants must scavenge for hints of undisclosed Brady material when the prosecution represents that all such material has been disclosed. . . . [D]efense counsel has no 'procedural obligation to assert constitutional error on the basis of mere suspicion that some prosecutorial misstep may have occurred.'" Id. at 695-96.

Further, in making the prosecution's conduct the central focus of the cause inquiry, the Court acknowledged the "special role

22

played by the American prosecutor in the search for truth in criminal trials." Banks, 540 U.S. at 696 (citation omitted). In light of a prosecutor's truth-finding obligations, the Court concluded that Banks was entitled to rely on the prosecution's representations. See id. at 698 ("Banks's prosecutors represented at trial and in state postconviction proceedings that the State had held nothing back. Moreover, in state postconviction court, the State's pleading denied that Farr was an informant. It was not incumbent on Banks to prove these representations false; rather, Banks was entitled to treat the prosecutors' submissions as truthful." (internal citations omitted)). Likewise, the Court concluded that "it was . . . appropriate for Banks to assume that his prosecutors would not stoop to improper litigation conduct to advance prospects for gaining a conviction" by standing silent as a key prosecution witness repeatedly testified untruthfully. Id. at 694.

The instant case presents facts akin to those in Banks. As in Banks, the prosecution told the defendant and the court that it had disclosed all Brady material although it had in fact withheld the police reports at issue. At trial, the prosecution allowed Bianca to testify in a seemingly untruthful fashion, all the while emphasizing the importance and credibility of her testimony. Cf. Banks, 540 U.S. at 675 ("Instead of correcting the informant's false statements, the prosecutor told the jury that the witness

23

'ha[d] been open and honest with you in every way,' and that his testimony was of the 'utmost significance'." (internal citations omitted)).  We did not consider these facts the last time we addressed Walker's Brady claim, however.

In light of Banks, these egregious, affirmative acts of prosecutorial misconduct cannot be ignored simply because Walker overlooked a hint of prosecutorial misconduct.  Unlike the police reports themselves, which strongly suggest that Bianca did not see the intruder who shot her father, the PSR only indicates that on one occasion Bianca referred to having recognized Walker's voice. The PSR does not reveal that on the night of the murder, Bianca never indicated having seen the intruder or that her statement about recognizing the intruder's voice was corroborated on multiple occasions.  Therefore, when placed in the context of the prosecution's representations that it had satisfied its obligations under Brady, its standing by as Bianca seemingly perjured herself, and its repeated assertions that Bianca was a trustworthy witness, the PSR's single mention of Bianca's voice identification of Walker provides no more than an inkling of prosecutorial misconduct. Simply put, the solitary reference to Bianca's hearing of the intruder's voice could have been disregarded by a defendant inclined to believe "that his prosecutors would not stoop to improper litigation conduct to advance prospects for gaining a

24

conviction." <u>Banks</u>, 540 U.S. at 694. Accordingly, I agree that Walker has shown cause for his procedural default.

Finally, I believe that Walker's showing of cause and prejudice is not merely sufficient to overcome the procedural default, but also to satisfy the second and third elements of a <u>Brady</u> claim. As observed in <u>Banks</u>, a defendant who shows cause and prejudice to excuse a procedural default simultaneously satisfies the second and third elements of a <u>Brady</u> claim--evidence suppressed by the state and prejudice, respectively. <u>See</u> <u>Banks</u>, 540 U.S. at 691. Without question, the first <u>Brady</u> element--the suppressed evidence is favorable to the accused--is satisfied here. <u>See</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999) (setting forth the elements of a <u>Brady</u> claim). Indeed, the undisclosed reports contain powerful impeachment material, which calls into question the veracity of Bianca's testimony. Thus, I believe that the conclusion that a <u>Brady</u> violation occurred flows from the finding of cause and prejudice. Accordingly, in lieu of remanding for an evidentiary hearing, I believe we could hold that Walker's due process rights were violated, grant the writ, and remand for a new trial.

WILLIAMS, Circuit Judge, dissenting:

With all due respect to the majority, I dissent.  I disagree with the majority's conclusion that Walker has shown cause sufficient to excuse his failure to raise in state[1] court his claim under Brady v. Maryland, 373 U.S. 83 (1963).  In my view, the Presentence Report (PSR) was plainly sufficient to make Walker aware of the factual basis of his Brady claim.  I would therefore affirm the district court's dismissal of Walker's § 2254 petition without evaluating whether Walker has shown prejudice.

I.

On or around the night of Beale's murder, officers, including Officer Mullins and Detective Hickman, interviewed Beale's daughter Bianca.  According to the officers' notes, reports, and affidavits (collectively "reports"), Bianca stated that she recognized her father's murderer by his voice.  (J.A. at 485 ("[Bianca] heard a voice and stated it sounded like [Walker] and she was positive that it was [Walker]." (Mullins' notes)); 489 ("[Bianca] stated that she recognized the voice of the subject . . . ." (Mullins report); 543A ("[Bianca] stated she recognized the voice of the perpetrator. . . ." (Hickman Aff.)).)  Because eyewitnesses to events generally do not describe the people who undertook those events by the sound of their voice, these reports tend to suggest that Bianca did not

---

[1]I use the familiar term "state" in lieu of "Commonwealth of Virginia."

26

actually see Walker break into the apartment and kill her father. The prosecution did not share the officers' reports with Walker despite its pre-trial representation that it had provided Walker all documents it was required to disclose. At Walker's trial, Bianca testified that: (1) she saw Walker come inside the apartment of her mother and father; (2) she saw that Walker was holding a gun; (3) she yelled at Walker, "my father don't know you;" (4) she saw Walker shoot her father; and (5) once the shooting started she ran into the bathroom. (J.A. at 25-29.)

Approximately four months before trial, Walker's counsel was given a copy of Beale's Autopsy Report, which stated that "[w]itnesses inside the [Beale apartment] heard the shots but did not witness the shooting." (Supp. J.A. at 7). Counsel did not cross-examine Bianca with respect to the contents of the Autopsy Report. After his conviction, but before his sentencing, the state prepared a PSR, which it gave to Walker. In relevant part, the PSR states:

> Bianca Taylor, the victim's daughter advised police she was talking on the phone with a neighbor. . . . She further advised police [that the neighbor] stated [to Bianca,] "[Walker] and his girlfriend] are coming to talk to you." Shortly thereafter, the shots began. Bianca Taylor later advised Detective Hickman that she recognized the voice of the suspect . . . .

(Pet'r Supp. App. at 250.) Despite the fact he was in possession of the Autopsy Report and the PSR, Walker did not raise a Brady claim with respect to the officers' reports on direct appeal.

27

Instead, Walker first raised his Brady claim in his state habeas corpus petition. The state court concluded that Walker's Brady claim was procedurally defaulted under Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974) (holding that state habeas petitioner waives argument on habeas review that "could have been raised and adjudicated at . . . trial and upon . . . appeal").

Walker filed a § 2254 petition in the United States District Court for the Eastern District of Virginia, raising, inter alia, his Brady claim. The district court dismissed Walker's petition, concluding, in relevant part, that the Brady claim was procedurally defaulted and that Walker had not shown cause and prejudice to excuse his default. Judge Gregory granted Walker a Certificate of Appealability on his Brady claim. On the merits, however, the panel unanimously affirmed, concluding that Walker could not show cause for his procedural default because the PSR made Walker aware of "the factual basis [of his] Brady claim." See Walker v. True, 67 F. App'x 758, 767-68 (4th Cir. 2003). The Supreme Court vacated and remanded for further consideration in light of Banks v. Dretke, 124 S. Ct. 1256 (2004). See Walker v. True, 126 S. Ct. 1028 (2006).


II.

As he did in his original appeal to this Court, Walker argues that he has shown "cause and prejudice" to overcome the procedural

28

default of his Brady claim. As to cause, he contends that the PSR and Autopsy Report were insufficient to make him aware of the factual basis of his claim because those reports suggested only that Bianca did not see the shooting, not that she did not see the shooter. Virginia argues -- as we held in our original opinion -- that the PSR was sufficient to make Walker aware of the factual basis of his Brady claim. I continue to agree with Virginia.

A federal court conducting habeas review is "precluded from reviewing the merits of a claim that was procedurally defaulted under an 'independent and adequate' state procedural rule, 'unless the [applicant] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (alteration in original) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). Walker does not dispute that the state court applied an adequate and independent procedural rule in finding that his Brady claim was procedurally defaulted. Moreover, he does not argue that failure to consider his Brady claim will result in a fundamental miscarriage of justice. Instead, he asserts only that "cause and prejudice" exist to excuse the default. We review de novo the district court's legal conclusions respecting cause and prejudice. See Burroughs v. Makowski, 411 F.3d 665, 667 (6th Cir. 2005).

29

In Strickler v. Greene, 527 U.S. 263 (1999), the Supreme Court set forth the three requirements for a successful Brady claim: "[1] the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] the evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." Id. at 281-82. As the Supreme Court noted in Strickler, the second and third elements of a successful Brady claim overlap with the "cause and prejudice" showing that will excuse a petitioner from a procedural default. Id. at 282; see also Banks, 124 S. Ct. at 1274 ("Corresponding to the second Brady component (evidence suppressed by the State), a petitioner shows 'cause' when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third Brady component (prejudice), prejudice within the compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for Brady purposes.").

In Strickler, the defendant had been convicted of capital murder, based, in part, on a witness's testimony that she had seen the defendant violently abduct the victim. 527 U.S. at 270-73. Despite the prosecution's open file policy, notes of the investigating officer and witness -- which revealed that the witness's memory of the abduction was hazy and that, from what she could remember, she had "totally [written the abduction] off as a

30

trivial episode of college kids carrying on," id. at 273-75 -- were not given to the defendant until after he had filed an unsuccessful direct appeal and state habeas petition. On appeal from the district court's grant of the defendant's § 2254 petition, which raised a Brady claim relating to the witness's testimony, the Fourth Circuit held that the defendant's Brady claim was procedurally defaulted and that the defendant could not show cause because "he should have known [about the police reports] through the exercise of reasonable diligence." Id. at 279.

The Supreme Court disagreed, holding instead that the defendant had shown cause because: "(a) the prosecution withheld exculpatory evidence; (b) petitioner reasonably relied on the prosecution's open file policy as fulfilling the prosecution's duty to disclose such evidence; and (c) the state confirmed petitioner's reliance on the open file policy by asserting during state habeas proceedings that petitioner had already received everything known to [it]." Id. at 289 (internal quotation marks and footnote omitted).[2] The state argued that the defendant's reliance on its open file policy was not reasonable because (1) counsel was aware that the witness had been interviewed by the police and (2) counsel could have made a motion for discovery of the files in the state courts, id. at 284-85, but the Supreme Court disagreed, stating

_____

[2]The Supreme Court left open the question "whether any one or two of these factors would be sufficient to constitute cause." Strickler v. Greene, 527 U.S. 263, 289 (1999).

that although the defendant was aware of the witness's interviews, "it by no means follows that [counsel] would have known that the records pertaining to those interviews . . . existed and had been suppressed . . . . [D]efense counsel [has no] procedural obligation to assert constitutional error on the basis of mere suspicion that prosecutorial misstep may have occurred," id. at 285-87 (emphasis added). The Court distinguished those cases in which cause was not found for the failure timely to raise a Brady claim by stating that, in those cases, the petitioner "was previously aware of the factual basis for his claim." Id. at 287. See also McCleskey v. Zant, 499 U.S. 467, 502 (1991)) ("[E]ven if the State intentionally concealed the 21-page document, the concealment would not establish cause here because, in light of McCleskey's knowledge of the information in the document, any initial concealment would not have prevented him from raising the claim in the first federal petition."); Hoke v. Netherland, 92 F.3d 1350, 1354 n.1 (4th Cir. 1996) ("Because it appears that the information, the withholding of which Hoke contends entitles him to relief, was available to Hoke, it is quite likely that he in fact did default his Brady claim by not presenting that claim in his initial state habeas proceeding.").

In Banks, the defendant had been convicted of capital murder based, in part, on the testimony of a paid police informant. 124 S. Ct. at 1264-65. The prosecutor asked the witness at trial

32

whether he had been promised anything in exchange for his testimony and, despite knowing the truth about the witness' status, the prosecutor did not correct the record when the witness testified in the negative. Id. In fact, although the prosecutor had an open file policy, he did not disclose this information until after the petitioner had filed an unsuccessful appeal and two state habeas petitions. Id. at 1269. On appeal from the district court's grant of the defendant's § 2254 petition, which raised a Brady claim relating to the witnesses' testimony, the Fifth Circuit held that Banks's Brady claim was procedurally defaulted because he had failed to develop that claim in his state proceedings. Id. at 1270.

Noting that, as to cause, Banks's "case is congruent with Strickler in all . . . respects," id. at 1273, the Supreme Court applied Strickler's three-part cause test, id. (examining whether prosecution withheld exculpatory evidence, whether petitioner reasonably relied on the prosecution's open file policy, and whether the state confirmed petitioner's reliance), reiterating Strickler's admonition that the petitioner's reliance on the Government's open file policy is reasonable if he has nothing more than "mere suspicion" of a Brady violation, id. at 1275 (quoting Strickler, 527 U.S. at 287). Accordingly, although Banks had suspicions that the witness was well-connected with law enforcement and could have discovered the truth by deposing the witness or the

33

police officer who paid him, Banks's failure to act on those nascent suspicions did not prevent the Court from finding cause for his failure timely to raise his Brady claim.  Id. at 1275-76. Moreover, the Court concluded that the reasonableness of Banks's reliance on the prosecution's open file policy was even greater than in Strickler because the Brady material went directly to the prosecutions's dealings with the witnesses -- in fact, it was the prosecution who coached them -- and "it was appropriate for Banks to assume that his prosecutors would not stoop to improper litigation conduct to advance prospects for gaining a conviction." Id. at 1273-74.

In my view, even assuming the Autopsy Report implied only that Bianca did not witness the actual shooting -- and not that she did not witness the shooter -- the PSR plainly gave Walker more than a "mere suspicion" that police reports existed suggesting Bianca did not witness the shooter.  Accordingly, Walker's reliance on the prosecutor's representation that he had disclosed all material he was required to disclose was unreasonable under Strickler and Banks.  First, the PSR specifically states that the information contained therein came from officers' investigation of the Beale murder, a statement that, unlike the facts in Strickler and Banks, indicated to Walker that there were extant documentation of the investigation.  Second, and also unlike the facts involved in Strickler and Banks, the PSR detailed the contents of those

34

reports, and actually went so far as to state that "Bianca . . . advised Detective Hickman that she recognized the voice of the suspect. . . ." (J.A. at 250.) Because, as already explained, eyewitnesses to events generally do not describe the people who undertook those events by describing the sound of their voice, the PSR was sufficient to put Walker on notice that there were police reports supporting an inference that Bianca did not see him the night of her father's murder. Indeed, I find it baffling that the majority can conclude both that "the withheld reports provide persuasive evidence that Bianca did not see the shooter the night of the murder" because they state that Bianca only recognized the shooter by his voice, ante at 12 (emphasis added), and at the same time that the PSR, which noted the existence of those reports and parroted their relevant substance, somehow failed to give Walker anything more than a mere suspicion of the factual basis of his Brady claim.

Accordingly, Walker's awareness of the existence of the alleged Brady material prior to his sentencing removes this case from the Strickler/Banks framework. Because Walker knew of the existence of the alleged Brady material in time to pursue his Brady claim on direct appeal, there is no reason to relieve him of the consequences of his failure to have done so.[3]

---

[3]My good colleague Judge Gregory confuses this point. He notes that in Banks v. Dretke, 124 S. Ct. 1256 (2004), the Supreme Court reaffirmed that defendants need not "scavenge for hints of undisclosed Brady material when the prosecution represents that all

As we concluded in our earlier opinion in this case, "[the PSR], by referencing these undisclosed documents, evidenced the Commonwealth's suppression of the alleged Brady material. The factual basis for the assertion of Walker's Brady claim, therefore, was available . . . before [his] direct appeal. . . ." Walker, 67 F. App'x at 767-68. "Because the [PSR] provided direct evidence that the Commonwealth had failed to disclose the alleged Brady material, Walker's reliance on Strickler for the premise that his appellate counsel had no basis to raise a Brady claim is therefore misplaced." Id. at 767 n. 6. Because nothing in Banks even arguably undermines this conclusion, I respectfully dissent.[4]

such material has been disclosed." Id. at 1275. This statement, however, hardly was a new statement of law considering that the Supreme Court in Strickler rejected "the novel suggestion that conscientious defense counsel have a procedural obligation to assert constitutional error on the basis of mere suspicion that some prosecutorial misstep may have occurred." Strickler, 527 U.S. at 286-87. Banks, in fact, did nothing to alter Strickler's cause inquiry. See Banks, 124 S. Ct. at 1272 ("Our determination as to 'cause' for Banks's failure to develop the facts in state-court proceedings is informed by Strickler."); id. at 1272 n.12 (expressing surprise at the Fifth Circuit's failure below to refer to Strickler, "the controlling precedent on the issue of 'cause'"); id. at 1273 ("This case is congruent with Strickler in all three [cause factor] respects."). The only difference with respect to the cause showing between Banks and Strickler was that "Banks's case [was] stronger than was the petitioner's in Strickler." Id. Thus, the Supreme Court in Banks did not alter the cause inquiry, but instead merely found cause in a case where the facts were slightly more egregious than those in Strickler. It is difficult, then, to comprehend Judge Gregory's contention that Walker can now show cause "[i]n light of Banks," ante at 24, when he was unable to do so in light of Strickler. Walker v. True, 67 F. App'x 758 (4th Cir. 2003).

[4]The majority concludes that Walker has shown both cause and prejudice to excuse his procedural default. As discussed, this

36

conclusion means that Walker has satisfied two of the three elements of a successful <u>Brady</u> claim.  <u>See</u> <u>Strickler</u>, 527 U.S. at 282 (equating the "cause and prejudice" showing with the second and third elements of a <u>Brady</u> claim).  The majority therefore remands for the district court to determine only whether Walker has shown the third element of a <u>Brady</u> claim; that is, that "the evidence at issue is favorable to [Walker], either because it is exculpatory or because it is impeaching."  <u>Id.</u> at 281-82.  Although the majority strangely refrains from addressing this legal question, its statement that "[t]he withheld reports provide persuasive evidence that Bianca did not see the shooter the night of [her father's] murder," <u>ante</u> at 12, answers this question in the affirmative.  In essence, then, as suggested by Judge Gregory's concurrence, the majority opinion results in an inevitable grant of Walker's § 2254 petition.